IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 10-00187-01-CR-W-ODS |
| | ) | |
| ROBERT MONTGOMERY, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

This matter is currently before the Court on the following pro se motions to dismiss filed by

defendant Montgomery:

1.    A letter to U.S. District Court Chief Judge Fernando J. Gaitan, dated January
      4, 2011, asking that jurisdiction be stated for the record or, in the alternative,
      for dismissal of the case (doc #40);

2.    Motion to Dismiss for Lack of Jurisdiction and Violations of Substantive Due
      Process Rights (doc #41);

3.    Motion to Dismiss for Lack of Jurisdiction and Violations of Substantive Due
      Process Rights (doc #42);

4.    Motion to Dismiss for Lack of Subject Matter Jurisdiction Under
      Fed.R.Civ.P. Title 28 U.S.C. Rule 12(b)(1)(7), (c), (h)(3)(1) (doc #46);

5.    Notice to the Court to Establish Jurisdiction Pursuant to Fed.R.Civ.P., Title
      28 U.S.C., Rule 8(a)(1), (2) and (3), (e) (doc #49);

6.    Motion to Dismiss for Violation of Due Process of Law Pursuant to United
      States Constitutional and Statutory Rights According to Fed.R.Crim.P. Title
      28 U.S.C. Rule 52(b) Plain Error (doc #52); and

7.    Motion to Dismiss for Lack of Jurisdiction and Failure to State Jurisdiction
      Pursuant to Fed.R.Crim.P. Title 28 U.S.C. Rule 47(a), (c) and (d) (doc #53)
      with Affidavit of Facts (doc #54).

For the reasons set forth below, it is recommended that these motions be denied.

I. INTRODUCTION

On June 21, 2010, a criminal complaint was filed against defendant Robert Montgomery.

The complaint charged that on June 21, 2010, defendant Montgomery, having been convicted of a

crime punishable by imprisonment for a term exceeding one year, knowingly possessed a firearm, to wit:  a Glock, Model 17, 9mm semi-automatic pistol, which had been transported in interstate commerce, in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2).  The affidavit given in support of the criminal complaint, signed by Task Force Officer Christopher A. Gilio, Bureau of Alcohol, Tobacco, Firearms and Explosives, provided in part:

> 2.    On June 21, 2010, at 12:35 a.m., Kansas City, Missouri Police Sergeant Gregory Williams was in the area of 13th and Highland in Kansas City, Jackson County, Missouri, regarding an aggravated assault shooting that occurred in the area.  Sergeant Williams received information that the shooting suspect was still in the area and was leaving in a red Dodge.  Sergeant Williams immediately observed a red Dodge with a freshly broken window and bullet holes in the exterior of the vehicle.  Sergeant Williams attempted to stop the vehicle on a car check and the driver refused to stop.  The vehicle struck a parked vehicle near 13th and Garfield and the driver who was later identified as Robert MONTGOMERY, DOB:  08/13/1972, fled on foot.  MONTGOMERY was taken into custody after a short foot pursuit. Sergeant Williams returned to the vehicle driven by MONTGOMERY and located a handgun on the passenger seat in plain view.  The handgun was recovered and determined to be a Glock, Model 17, 9mm semi-automatic pistol, Serial Number GW530US.

> 3.    On May 7 [sic], 2010, Detective Chris Toigo of the Kansas City, Missouri Police Department, Robbery Unit, advised Robert MONTGOMERY of his *Miranda* rights and questioned him regarding his arrest.  During questioning, MONTGOMERY admitted that he ran from the pursuing police officers but denied knowledge of the firearm that was found inside of his vehicle.

> 4.    On June 21, 2010, I reviewed the criminal history relating to the felony convictions of Robert MONTGOMERY.  On August 12, 1998, in the Circuit Court of Jackson County, Missouri, Case Number CR199803805, MONTGOMERY was sentenced to five years of imprisonment relative to a felony conviction of Distribution of a Controlled Substance.

> 5.    I know based on my experience and training that the previously described Glock pistol was not manufactured in Missouri.  The pistol was most likely manufactured in Austria.

(doc #1-1)

On June 29, 2010, the Grand Jury returned a one count indictment against Robert Montgomery.  The indictment charges that on June 21, 2010, defendant Montgomery, having been convicted of crimes punishable by imprisonment for terms exceeding one year, knowingly possessed a firearm, to wit, a Glock, Model 17, 9mm semi-automatic pistol, which had been transported in interstate commerce, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

On December 23, 2010, defendant Montgomery filed a pleading entitled Motion By Defendant Robert Montgomery Invokes the Right to Self-Representation With Advisory Counsel on Standby to Assist (doc #35). Defendant Montgomery was granted leave to proceed <u>pro</u> <u>se</u> on January 13, 2011.

On January 13, 2011, the government filed a Notice of Prior Convictions of the Defendant and Notice of the Government to Enhance the Defendant's Sentence Under the Armed Career Criminal Act, 18 U.S.C. § 924(e). The notice lists the following prior convictions:

1.   1994 conviction for Assault in the Second Degree, in Case Number CR94-4073 in Jackson County, Missouri;

2.   1998 conviction for Sale of a Controlled Substance in Case Number 16CR98003805-01 in Jackson County, Missouri;

3.   2000 conviction for Felon in Possession of a Firearm, Case Number 00-00036-01-CR-W-2, in the Western District of Missouri; and

4.   2008 conviction for Domestic Assault in the Second Degree, in Case Number 076-CR06608 in Jackson County, Missouri.

(doc #38)

## II. DISCUSSION

Defendant Montgomery's motions contain a jumbled collection of quotations and citations. The Court has attempted to decipher defendant's pleadings and pull out the arguments for dismissal that defendant is advancing. These arguments for dismissal include:

1.   the Court does not have subject matter jurisdiction;

2.   the magistrate judge exceeded her authority and violated defendant's substantive due process rights when she asked defendant and defendant's counsel to enter a plea at the arraignment;

3.   defendant was denied his due process rights because he was not permitted to participate in the selection of the grand jury;

4.   in a pleading entitled "Judicial Notice" defendant advances numerous arguments for dismissal such as there is no personal jurisdiction as defendant is an "american national Free State Citizen," "living breathing flesh and blood Sovereign man" who is not subject to the Trading With the Enemy Act, the government has placed defendant's name in all capital letters, and because the standard American Flag has been replaced with a Military Admiralty Flag in the Courtroom;

5.    the United States District Court is an Article I court that lacks jurisdiction over this case due to improper venue;

6.    defendant claims to be "sovereign" and therefore immune from suit under the Eleventh Amendment;

7.    18 U.S.C. § 922(g)(1) is unconstitutional;

8.    there has been no proof of an interstate transaction; and

9.    the government has engaged in vindictive prosecution in that the prosecutor sought harsher punishment after defendant's "continuous efforts to exercise his acknowledgment of the 'multiple' violations of Defendants Due Process of Law Rights" and defendant's failure to plead guilty.

The Court will address each of defendant's arguments listed above. To the extent that defendant's pleadings contain references to any other arguments, the Court finds these additional arguments frivolous.

A.    Jurisdiction

A major theme in all of defendant's filings is that the Court lacks subject matter jurisdiction. Defendant argues that the Federal Government's authority to regulate interstate commerce does not apply to him. Defendant relies on Wickard v. Filburn, 317 U.S. 111 (1942), a Supreme Court case in which it was held constitutional for Congress, under the Commerce Clause, to impose penalties on farmers receiving benefits under a federal subsidy program. According to defendant Montgomery, because he has never accepted benefits from a federal agency regulating firearms, the Court has no jurisdiction over him.

The same argument was made and rejected in the case of United States v. McDowell, 2010 WL 5014445 (D. Kan. Dec. 3, 2010). The court wrote:

> [Defendants] misconstrue the jurisdiction of federal district courts. Under the United States Code, district courts of the United States have original jurisdiction of all offenses against the laws of the United States. 18 U.S.C. § 3231. Criminal jurisdiction of courts of the United States is derived exclusively from acts of Congress. Hudspeth v. Melville, 127 F.2d 373, 375 (10th Cir. 1941)(citing Jones v. United States, 137 U.S. 202 (1890)). Thus, for the Court to have subject matter jurisdiction over a criminal defendant, Congress must have explicitly prescribed the criminal offense. See Jerome v. United States, 318 U.S. 101, 105 (1943). In this case, Mr. Pitter and Mr. McDowell have been charged in part with conspiracy to distribute and possess with the intent to distribute 1000 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 841(a) and 846, continuing criminal

4

enterprise, in violation of 21 U.S.C. § 848, and using a communication facility, a cellular telephone, in facilitating the offense, in violation of 21 U.S.C. § 843(b).

McDowell, 2010 WL 5014445 at *5. See also United States v. Trotter, 478 F.3d 918, 920 n.2 (8th Cir. 2007)("Because Trotter was charged with an offense against the laws of the United States, the court clearly had jurisdiction and his motion to dismiss was properly denied.")

In this case, defendant Montgomery has been charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2). This Court has subject matter jurisdiction over defendant Montgomery's case.

### B.     Magistrate Judge's Authority

Defendant argues that the undersigned magistrate judge exceeded her authority and violated defendant's substantive due process rights when she asked defendant and defendant's counsel to enter a plea at the arraignment.

The same argument was again made and rejected in the case of United States v. McDowell, 2010 WL 5014445 (D. Kan. Dec. 3, 2010). The court wrote:

> Pursuant to Title 28 of the United States Code, magistrate judges have those powers and duties conferred or imposed upon United States commissioners by law or by the Rules of Criminal Procedure for the United States District Courts. 28 U.S.C. § 636(a)(1). Included in this power is the authority of the judge to ask a defendant to enter a plea. Rule 5(d)(4) of the Federal Rules of Criminal Procedure dictates that a defendant may be asked to plead only under Rule 10. Rule 10 ensures that at an arraignment, the defendant has a copy of the indictment or information, the judge reads or states the substance of the indictment to the defendant, and the judge asks the defendant to plead to the indictment. Fed.R.Crim.P. 5(a). An arraignment in accordance with Rule 10 is intended to be a safeguard for due process. Merritt v. Hunter, 170 F.2d 739, 741 (10th Cir. 1948).

McDowell, 2010 WL 5014445 at *4.

Here, the undersigned abided by Rule 5 and Rule 10 during the arraignment of defendant Montgomery (doc #16). After defendant was advised of the charges in the indictment, a not guilty plea was entered for him by counsel. The undersigned did not exceed the authority bestowed upon her under Title 28 or the Federal Rules of Criminal Procedure.

### C.     Grand Jury Selection

Defendant Montgomery argues that because he was not permitted to participate in the

selection of the grand jury, he was denied his due process rights, and as a result, the case should be dismissed.  Defendant alleges he ought to have been allowed to be present for the selection of the grand jury for the opportunity to object.  According to defendant, Rule 6 of the Federal Rules of Criminal Procedure and 28 U.S.C. § 1867 guarantee a party the opportunity to object to the grand jury or an individual grand juror at the time of the selection process.  Rule 6(b) provides:

> (1) **Challenges.**  Either the government or a defendant may challenge the grand jury on the ground that it was not lawfully drawn, summoned, or selected, and may challenge an individual juror on the ground that the juror is not legally qualified.
>
> (2) **Motion to Dismiss an Indictment.**  A party may move to dismiss the indictment based on an objection to the grand jury or on an individual juror's lack of legal qualification, unless the court has previously ruled on the same objection under Rule 6(b)(1).  The motion to dismiss is governed by 28 U.S.C. § 1867(e).  The court must not dismiss the indictment on the ground that a grand juror was not legally qualified if the record shows that at least 12 qualified jurors concurred in the indictment.

Fed.R.Crim.P. 6(b)(1) and (2).  The rule does not explicitly state, nor does it suggest, that a defendant has the right to be present during the grand jury selection or to challenge the selection process at that time.

The same argument was again made and rejected in the case of United States v. McDowell, 2010 WL 5014445 (D. Kan. Dec. 3, 2010).  The court wrote:

> The Jury Selection and Service Act, 28 U.S.C. § 1861 et seq., governs the selection of grand jury and petit juries in federal court, and section 1867 provides the exclusive means by which a party may challenge grand jury selection procedures. United States v. Contreras, 108 F.3d 1255, 1267 (10th Cir. 1997).  The procedural requirements are designed to give the district court an opportunity to evaluate the alleged noncompliance and to correct such noncompliance before judicial resources are invested in a trial.  Id. at 1266 (citing United States v. Kennedy, 548 F.2d 608, 612-14 (5th Cir. 1997)).  Section 1867(a) articulates that challenges to procedures under the Act must be made before voir dire examination begins or within seven days after the defendant discovered or could have discovered the grounds therefore.  28 U.S.C. § 1867(a).  It does not state, however, that such challenges may be made during the selection process itself.  Mr. Pitter and Mr. McDowell have not provided, nor has the Court's independent research revealed, any case law that recognizes the power of a party to challenge the grand jury at the time of its selection.

McDowell, 2010 WL 5014445 at *1.

Should defendant Montgomery wish to object to the grand jury selection process or

qualifications of individual grand jurors, he must do so in accordance with 28 U.S.C. § 1867.

     D.     Judicial Notice

In a pleading entitled "Judicial Notice" defendant advances numerous arguments for dismissal. Defendant argues that there is no personal jurisdiction over him as he is an "american national Free State Citizen," "living breathing flesh and blood Sovereign man" who is not subject to the Trading With the Enemy Act. Further, defendant argues that the case should be dismissed as the government has placed defendant's name in all capital letters and because the standard American Flag has been replaced with a Military Admiralty Flag in the Courtroom.

Again, the same arguments were recently made and rejected in the District of Kansas, this time in the case of United States v. Blackburn, 2010 WL 5185390 (D. Kan. Dec. 15, 2010). The court wrote:

> Mr. Blackburn's judicial notice is a 21-page submission of copied excerpts from cases, statutes, and treatises, raising a number of disjointed and convoluted arguments for why the charges against him must be dismissed. For example, Mr. Blackburn claims that the case must be dismissed because the Indictment ... spells his name in all capital letters, and this in and of itself is a fatal flaw. He cites to style manuals and administrative codes demonstrating that all capital letters are used when spelling a corporation's name in legal documents, but not when referring to a living person. Because he is a "living, breathing, flesh and blood sovereign man," Mr. Blackburn contends that the Indictment can only spell his name with upper and lower case spelling to be effective against him.

> This argument has been attempted by several defendants in federal district court without success. See, e.g., United States v. Mitchell, 405 F.Supp.2d 602, 604-05 (D.Md. Dec. 19, 2005); United States v. Singleton, 2004 WL 1102322, at *3 (N.D. Ill. May 7, 2004). The courts held that use of all upper case letters or a mixture of upper and lower case letters is not relevant to the question of jurisdiction, nor will it render an indictment inapplicable. Id. The mandatory style requirement for identifying parties in a case is a level of formalism abandoned by federal courts long ago, and the use of capital letters in referring to a defendant in legal documents is simply irrelevant. Mitchell, 405 F.Supp.2d at 604. Here, the government and the Court have addressed Mr. Blackburn, both in court and on paper, in a proper manner that clearly identifies him. See Id. Mr. Blackburn's argument is thus rejected.

> Similarly far-fetched is Mr. Blackburn's argument that the Constitution has been suspended since the Emergency War Powers Act in 1933. Mr. Blackburn asserts that the 1933 amendments to the Trading with the Enemy Act "turned the American people into enem[ies] of the state," and therefore the "standard American flag in the courtroom was replaced with a military [a]dmiralty flag for dealing with alien enemy residents." No factual authority is cited by Mr. Blackburn in support of these claims. Once again, similar arguments have been raised and dismissed in

previous cases. See, e .g., Eidson v. Burrage, 113 F. App'x 860, 862 (10ᵗʰ Cir. 2004) (dismissing defendant's argument that the "yellow fringe flag" conferred maritime jurisdiction); Commonwealth v. Appel, 652 A.2d 341, 343 (Pa.Super.Ct.1994) (dismissing defendant's "preposterous" claim that the gold fringe on the American flag in the courtroom conferred maritime jurisdiction). Likewise, the Court rejects Mr. Blackburn's argument.

Blackburn, 2010 WL 5185390 at *3-4.

For the reasons set forth by the Blackburn court, this Court finds that defendant Montgomery's arguments should, likewise, be rejected.

E.    Venue

Defendant Montgomery argues that the United States District Court is an Article I court that lacks jurisdiction over this case due to improper venue. As with many of defendant's other arguments, this identical argument was recently made and rejected in the District of Kansas. In the case of United States v. Blackburn, 2010 WL 5014449 (D. Kan. Dec. 3, 2010), the court wrote:

> Mr. Blackburn also submits that this United States District Court is an Article I court that lacks jurisdiction over this case due to improper venue. According to Mr. Blackburn, venue in an Article I court is only appropriate if the incriminating actions took place in a designated federal area, such as a national forest or lake. Because the alleged criminal activities in this case did not take place on land in possession of the federal government, Mr. Blackburn contends venue is improper, and the case must be dismissed.
>
> The United States District Court for the District of Kansas is in fact a properly constituted district court under Article III and federal statutes. Article III of the United States Constitution provides that "The judicial Power of the United States shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." U.S. Const. art. III, § 1; N. Pipeline Const. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 59 (1982). The United States Code states that there "shall be in each judicial district a district court which shall be a court of record known as the United States District Court for the district." 28 U.S.C. § 132(a). There is no colorable support for Mr. Blackburn's contention that this Court is not an Article III court. See Rollins v. Ingersoll-Rand Co., 240 F. App'x 800, 802 (10ᵗʰ Cir. 2007).
>
> Because this Court is an Article III district court and not an Article I court as Mr. Blackburn proposes, the Court will address venue only to the extent that it applies to Article III district courts. Venue in federal criminal cases is a question of fact which is part of the prosecution's case. Wilkett v. United States, 655 F.2d 1007, 1011 (10ᵗʰ Cir. 1981). Although venue is not a substantive element of a crime, it must be proved in every criminal case. United States v. Kelly, 535 F.3d 1229, 1233 (10ᵗʰ Cir. 2008). Unlike other facts in the prosecution's case, however, venue may be proven by mere preponderance of the evidence. United States v. Byrne, 171 F.3d 1231, 1234 (10ᵗʰ Cir. 1999).

The Federal Rules of Criminal Procedure require that "unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed." Fed.R.Crim.P. 18. ...

Blackburn, 2010 WL 5014449 at *3.

The indictment in this case charges that on June 21, 2010, "in the Western District of Missouri," defendant Montgomery possessed a firearm. Venue is proper.

F.    Eleventh Amendment Immunity

Defendant Montgomery claims to be "sovereign" and therefore immune from suit under the Eleventh Amendment. This argument was also made and rejected in United States v. Blackburn, 2010 WL 5014449 (D. Kan. Dec. 3, 2010). The court wrote:

> Throughout his motions to dismiss, Mr. Blackburn claims he is a "sovereign" and therefore immune from suit under the Eleventh Amendment. The government explains that Mr. Blackburn misunderstands the meaning of the Eleventh Amendment. The Eleventh Amendment to the United States Constitution states:
>
> > The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.
>
> U.S. Const. amend. XI. This Amendment grants the states sovereign immunity from suits brought in federal court by their own citizens, by citizens of other states, by foreign sovereigns, and by Indian tribes. See Prairie Band Potawatomi Nation v. Wagnon, 476 F.3d 818, 827 (10th Cir. 2007)(citing Blatchford v. Native Vill. of Noatak, 501 U.S. 775, 779-80 (1991)).
>
> Immunity is afforded to states and state actors in their official capacities but does not extend to private individuals as Mr. Blackburn suggests. See Meade v. Grubbs, 841 F.2d 1512, 1525 (10th Cir. 1988)(citing Hans v. Louisiana, 134 U.S. 1 (1890)). Regardless of how Mr. Blackburn characterizes himself, he is not a state, and he therefore does not have authority to invoke the Eleventh Amendment. See Magnolia Marine Transp. Co. v. Oklahoma, 366 F.3d 1153, 1158 (10th Cir. 2004). No citizen or member of the community is immune from prosecution, in good faith, for his alleged criminal acts. Beal v. Missouri Pacific Railroad Corp., 312 U.S. 45, 49 (1941). Mr. Blackburn provides no authority to support the notion that the Eleventh Amendment may apply in criminal actions brought by the United States against an individual. Mr. Blackburn is accused by the United States of committing a crime in violation of federal law and is therefore subject to the jurisdiction of this Court. See 18 U.S.C. § 3231. Mr. Blackburn's sovereign immunity argument is rejected.

Blackburn, 2010 WL 5014449 at *5. See also United States v. Knudson, 959 F. Supp. 1180, 1184 (D. Neb. 1997)(defendant's claim that he is sovereign and immune from suits brought by the federal

government is frivolous and without merit).

Defendant Montgomery's sovereign immunity argument must be rejected.

G.    Constitutionality of 18 U.S.C. § 922(g)(1)

Defendant Montgomery argues that pursuant to United States v. Lopez, 514 U.S. 549 (1995), Congress exceeded its commerce clause authority in enacting 18 U.S.C. § 922(g)(1) and 924(a)(2). The Eighth Circuit has consistently held that 18 U.S.C. § 922(g) is constitutional and not violative of the Commerce Clause. In United States v. Stuckey, 255 F.3d 528 (8th Cir. 2001), the court analyzed the constitutionality of section 922(g)(1) as follows:

> Stuckey argues that the Supreme Court's decisions in United States v. Lopez, 514 U.S. 549 ... (1995)(involving the Gun-Free School Zones Act, codified at 18 U.S.C. § 922(q)), and United States v. Morrison, 529 U.S. 598 ... (2000)(involving the Violence Against Women Act, codified in part at 42 U.S.C. § 13981), both of which struck down statutes as unconstitutional exercises of the Commerce Clause, require the court to strike down 18 U.S.C. § 922(g)(1).
>
> Because § 922(g)(1) contains an express jurisdictional element that satisfies the Commerce Clause, a long line of post-Lopez Eighth Circuit decisions have rejected claims that the statute is unconstitutional. ...
>
> Nothing in Morrison changes our mind about the constitutionality of § 922(g)(1). ... We agree with those circuits that have specifically rejected the notion that Morrison calls into question the constitutionality of § 922(g)(1):
>
> > The jurisdictional element in § 922(g)(1) puts it into a different category of analysis than the laws considered in Lopez and Morrison. Section 922(g)(1) by its language only regulates those weapons affecting interstate commerce by being the subject of interstate trade. It addresses items sent in interstate commerce, and the channels of commerce themselves–ordering they be kept clear of firearms. Thus, no analysis of the style of Lopez or Morrison is appropriate.
>
> United States v. Dorris, 236 F.3d 582, 586 (10th Cir. 2000); see United States v. Santiago, 238 F.3d 213, 216 (2nd Cir. 2001)("Unlike the statutes at issue in either Lopez or Morrison, § 922(g) includes an express jurisdictional element requiring the government to provide evidence in each prosecution of a sufficient nexus between the charged offense and interstate or foreign commerce.") ...

Stuckey, 255 F.3d at 529-30 (footnote omitted). See also United States v. Schmidt, 571 F.3d 743, 746 (8th Cir. 2009)("This Court has repeatedly held § 922(g)(1) ... is expressly tied to interstate commerce."); United States v. Shepherd, 284 F.3d 965, 969 (8th Cir. 2002)(claim that section 922(g)(1) is not a constitutional exercise of congressional power has already been considered and

rejected by prior decisions of this court upholding constitutionality of felon in possession statute versus a Commerce Clause argument); United States v. Abernathy, 277 F.3d 1048, 1051-51 (8th Cir. 2002)(constitutional challenge to section 922(g)(1) is without merit); United States v. Holman, 197 F.3d 920, 921 (8th Cir. 1999)("Lopez challenge to section 922(g) is foreclosed by our prior decisions").

Defendant Montgomery further argues that section 922(g) violates his Second Amendment rights to keep and bear arms. In United States v. Wilson, 315 F.3d 972 (8th Cir. 2003), the court provided the following with respect to the defendant's argument that 18 U.S.C. § 922(g)(1) violated the Second Amendment to the United States Constitution:

> Wilson argues (1) that the Second Amendment provides an individual right to bear arms and (2) that because of this right, 18 U.S.C. § 922(g)(1) is unconstitutional.[FN3] However, as Wilson acknowledges, this Circuit's established precedent upholds the constitutionality of § 922(g)(1). See, e.g., United States v. Waller, 218 F.3d 856, 857 (8th Cir. 2000)(per curiam)(holding that "it is now well-settled that Congress did not violate the Second Amendment in enacting" 18 U.S.C. § 922(g)(1)); Cody v. United States, 460 F.2d 34, 37 (8th Cir. 1972).
>
> _____
>
> [FN3]Wilson relies heavily upon United States v. Emerson, 270 F.3d 203, 259 (5th Cir. 2001)(holding that the Second Amendment "protects the right of individuals, including those not then actually a member of any militia or engaged in active military service or training, to privately possess and bear their own firearms ..."). However, Emerson nonetheless upheld the constitutionality of § 922(g)(8) which prohibits an individual subject to certain restraining orders from possessing a firearm.

Wilson, 315 F.3d at 973.

Based on the authorities set forth above, this Court must reject defendant's constitutional challenges to 18 U.S.C. § 922(g)(1).

H.      Interstate Transaction

Defendant Montgomery argues that this case should be dismissed as there has been no proof of an interstate transaction. An essential element of section 922(g) is that "the firearm was transported across a state line at some time during or before the defendant's possession of it." Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit at 6.18.922 (2002). Given that the instant indictment contains the necessary element, i.e. that defendant

possessed a firearm "which had been transported in interstate commerce," defendant's argument for dismissal must fail. Whether the government will introduce sufficient evidence to prove that the firearm was transported across a state line at some time during or before the defendant's possession of it cannot be resolved prior to the government's presentation of its case to the jury.

I.      Vindictive Prosecution

Finally, defendant Montgomery argues that the government has engaged in vindictive prosecution in that the prosecutor sought harsher punishment after defendant's "continuous efforts to exercise his acknowledgment of the 'multiple' violations of Defendants Due Process of Law Rights" and defendant's failure to plead guilty.

In United States v. Burt, 619 F.2d 831 (9th Cir. 1980), the Ninth Circuit Court of Appeals set forth the framework for determining whether charges should be dismissed for vindictive prosecution:

> When a defendant attempts to have the charges dismissed based on an allegation of vindictive prosecution, then the defendant must make the initial showing of an "appearance of vindictiveness." In most cases, this involves a showing that the prosecutor has re-indicted the defendant and increased the severity of the charge, after the defendant has exercised a statutory or constitutional right. The defendant does not have to demonstrate that the prosecution in fact acted with a malicious or retaliatory motive. Instead, once the defendant has made this prima facie showing, then vindictiveness may be inferred.

> At this point, the burden then shifts to the prosecution to prove that the increase in the severity of the charges did not result from any vindictive motive. Instead, the prosecutor, to rebut the presumption, must show that his decision to re-indict with more severe charges was "justified by independent reasons or intervening circumstances which dispel the appearance of vindictiveness."

Id. at 836 (citations omitted).

Defendant Montgomery has failed to make a prima facie showing of vindictive prosecution in that he has failed to make any showing that the charges against him have changed. Defendant still faces the same charges he faced in the initial complaint and indictment. The only thing that has changed is that the government, by filing the Notice of Prior Convictions of the Defendant and Notice of the Government to Enhance the Defendant's Sentence Under the Armed Career Criminal Act, 18 U.S.C. § 924(e), has advised defendant of the penalties he faces under the Armed Career Criminal Act. Defendant faces these penalties based on his prior convictions rather than any

additional charges brought by the government. The Court must reject defendant's claim of vindictive prosecution.

## III.  CONCLUSION

For the reasons set forth above, it is

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order denying dismissal of this criminal action as requested in defendant's pleadings (docs #40, #41, #42, #46, #49, #52 and #53).

The parties are reminded they have fourteen days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections to same. A failure to file and serve objections by this date shall bar an attack on appeal of the factual findings in this Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

*/s/ Sarah W. Hays*
SARAH W. HAYS
UNITED STATES MAGISTRATE JUDGE
