IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 10-00187-01-CR-W-ODS |
| ROBERT MONTGOMERY, | ) ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

This matter is currently before the Court on defendant's Motion to Suppress Evidence (doc #75). For the reasons set forth below, it is recommended that this motion be denied.

I. INTRODUCTION

On June 29, 2010, the Grand Jury returned a one count indictment against Robert Montgomery. The indictment charges that on June 21, 2010, defendant Montgomery, having been convicted of crimes punishable by imprisonment for terms exceeding one year, knowingly possessed a firearm, to wit, a Glock, Model 17, 9mm semi-automatic pistol, which had been transported in interstate commerce, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

On July 19, 2011, the undersigned conducted an evidentiary hearing on defendant's motion to suppress. Defendant Montgomery appeared pro se and with stand-by counsel Assistant Federal Public Defender Travis Poindexter. The Government was represented by Assistant United States Attorney David A. Barnes. The Government called Sergeant Gregory Williams of the Kansas City, Missouri Police Department as a witness. The defense called no witnesses to testify.

II. FINDINGS OF FACT

On the basis of the evidence adduced at the evidentiary hearing, the undersigned submits the following proposed findings of fact:

1. Shortly after midnight on June 21, 2010, officers were dispatched to the area of 13th and Highland on a 911 call of a black male wearing a white shirt shooting a weapon. (Tr. at 11, 28; Government's Ex. 1) Officers responded and attempted to stop a silver car in the area with a party matching the description driving the car. (Tr. at 12-

13) The silver car took off and a chase ensued into Kansas. (Tr. at 12-13) Officers were unable to catch the silver car. (Tr. at 13)

2. While officers were chasing the silver car, Sergeant Gregory Williams was responding to the area of the shooting. (Tr. at 14) As Sergeant Williams was on his way, another officer, Officer Collier, made a phone call back to the original calling party to try and get more information about what had happened. (Tr. at 14) The calling party then told the officer that the guy who had been shooting was leaving right then in a red car. (Tr. at 14) Sergeant Williams had just arrived at the location and saw a red car with bullet holes and glass falling from the windows turn in front of him. (Tr. at 14) Sergeant Williams believed that this car was involved in the shooting. (Tr. at 14) Sergeant Williams followed the red car and waited for additional police to arrive and get situated before he attempted to stop the car. (Tr. at 15) Even though the driver of the red car was not breaking any traffic laws, Sergeant Williams intended to stop the car. (Tr. at 15, 36-38) Sergeant Williams was just waiting for other officers to get into place. (Tr. at 38-39) Sergeant Williams believed that once he attempted to pull the car over, it would take off. (Tr. at 15) Sergeant Williams was driving a fully marked police car. (Tr. at 16)

3. The red car took off at a high rate of speed in excess of the posted speed limit. (Tr. at 16) Sergeant Williams then activated his emergency equipment lights and sirens and initiated a police pursuit. (Tr. at 17) The driver of the red car failed to pull over. (Tr. at 17) Sergeant Williams testified it is a violation of the Kansas City Municipal Code to fail to yield to an officer after he activates his lights and siren. (Tr. at 17) The red car went through two stop signs, failing to stop. (Tr. at 17) As it approached the 1300 block of Garfield, it wrecked into a parked car. (Tr. at 17) The driver of the red car got out of the car and proceeded to flee the scene. (Tr. at 18) Sergeant Williams testified that running away from the scene of an accident is another violation of the municipal code. (Tr. at 18) Sergeant Williams pursued the suspect across an open field in his police car while other police were coming from the far side, sandwiching the suspect. (Tr. at 18) The suspect was taken to the ground and handcuffed. (Tr. at 19)

4. Sergeant Williams went back to secure the scene where the wreck had occurred. (Tr. at 48) Sergeant Williams looked in the vehicles with a flashlight to make sure there were no other occupants of the vehicles and to make sure that no one was hurt. (Tr. at 49) People were coming out of their houses to see what was going on. (Tr. at 49) Sergeant Williams told them to stay back and that he would be with them shortly. (Tr. at 49) Sergeant Williams returned to the location where defendant Montgomery was being held to determine whether Montgomery needed any medical attention. (Tr. at 49) Sergeant Williams assigned another officer to go and stay by the vehicles to make sure no one touched them. (Tr. at 49)

5. The suspect, defendant Robert Montgomery, was run through the computer for wants and warrants. (Tr. at 21, 50-51) Sergeant Williams testified that he believed Montgomery had some city warrants. (Tr. at 21) Sergeant Williams also received information that Montgomery was a felon. (Tr. at 21, 51) Sergeant Williams returned to the red car and did a more thorough search by walking around the vehicle and looking into the vehicle, without getting inside the vehicle. (Tr. at 51) As he walked around to look in the vehicle through the passenger's side, Sergeant Williams saw a Glock pistol in the passenger's seat in plain view. (Tr. at 19-20, 51) Sergeant Williams did not immediately recover the pistol because he did not yet know if this

2

was a homicide, a robbery, a stealing or a property damage case. (Tr. at 20) Sergeant Williams had worked as a detective and he knew that officers can mess things up if they go too fast. (Tr. at 20) Sergeant Williams made some phone calls to determine how to proceed. (Tr. at 20) Sergeant Williams testified that he needed to determine who was going to take over the investigation because different units handle things differently. (Tr. at 20-21) Sergeant Williams contacted the Robbery Unit, per standard operating procedure, with regard to possible felon in possession charges. (Tr. at 21, 52) The Robbery Unit told Sergeant Williams to secure the weapon. (Tr. at 52) Montgomery was arrested on felon in possession charges. (Tr. at 21)

6. The red car was searched at the scene and then towed. (Tr. at 21) Sergeant Williams testified that even if the firearm had not been in plain view, it would have been discovered in the inventory search prior to the tow. (Tr. at 21-22) Kansas City Police Department procedure requires police to search a vehicle and inventory it prior to a tow. (Tr. at 21-22)

## III. DISCUSSION

Defendant Montgomery seeks to suppress the 9mm Glock firearm, all statements made during subsequent interrogation based on the illegality of the arrest and all other evidence the government seeks to introduce against him in its case-in-chief. (Motion to Suppress Evidence at 1, 3) In support of his motion, defendant argues that "[t]here exists no sufficient amount of evidence connecting the defendant to the alleged evidence recovered by police officers." (Id. at 1) Further, defendant argues that "[a]s he was the victim of an attempt on his life, there was no reasonable suspicion to believe that he was guilty of any criminal activity to place him under arrest." (Id. at 2) Finally, defendant argues that the search of his vehicle was illegal. (Id.)

Both investigative stops and arrests are seizures. However, an investigative stop need only be supported by a reasonable, articulable suspicion that criminal activity may be afoot, whereas an arrest must be supported by probable cause. See Terry v. Ohio, 392 U.S. 1, 25-31 (1968); United States v. Raino, 980 F.2d 1148, 1149 (8th Cir. 1992), cert. denied, 507 U.S. 1011 (1993); United States v. Miller, 974 F.2d 953, 956 (8th Cir. 1992); United States v. Jones, 759 F.2d 633, 636 (8th Cir.), cert. denied, 474 U.S. 837 (1985). "A dual inquiry determines the reasonableness of an investigative stop: 'whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place.'" United States v. Doffin, 791 F.2d 118, 120 (8th Cir.), cert. denied, 479 U.S. 861 (1986)(quoting Terry

3

v. Ohio, 392 U.S. 1, 19-20 (1968)).

The record in this case establishes that on June 21, 2010, officers responded to a 911 call of a black male wearing a white shirt shooting a weapon. (See Fact No. 1, supra) Just as he was arriving at the scene, Sergeant Williams received additional information that the shooter was then leaving the scene in a red car. (See Fact No. 2, supra) Sergeant Williams saw a red car with bullet holes and glass falling from the windows turn in front of him. (Id.) Sergeant Williams followed the red car. (Id.) Sergeant Williams intended to stop the car and was just waiting for other officers to get into place. (Id.) Before Sergeant Williams attempted to stop the red car, it took off at a high rate of speed in excess of the posted speed limit. (See Fact No. 3, supra) In addition to the speeding violation, the driver of the red car (defendant Montgomery) committed several other traffic violations including failure to yield to an officer after he activates his lights and siren, failure to stop at stop signs and running away from the scene of an accident. (Id.) After he wrecked into a parked vehicle and then fled from police on foot, defendant Montgomery was taken to the ground and handcuffed. (Id.)

Reasonable suspicion entails some minimal level of objective justification for making a stop– that is, something more than a suspicion or hunch. See United States v. Sokolow, 490 U.S. 1, 7 (1989); United States v. Delaney, 52 F.3d 182, 187 (8th Cir.), cert. denied, 516 U.S. 878 (1995). Based on the facts known to the officers at the time they attempted to stop defendant Montgomery, the Court concludes that the officers had a reasonable, articulable suspicion that Montgomery may have been engaged in criminal activity and that the officers were justified in conducting an investigative stop of him. The officers were not acting on a mere hunch. They had been dispatched to investigate a shooting. When they arrived on the scene, they were provided additional information that the shooter was leaving the scene in a red car. Sergeant Williams observed a red car with bullet holes and glass falling from the windows leaving the scene to which he had been dispatched. Thus, the first part of the Terry inquiry shows that the investigative stop was justified

under the circumstances.[1]

As to the second part of the Terry inquiry, "a police officer may take steps reasonably necessary to protect his or her personal safety and the safety of others and to maintain the status quo of a situation while verifying or dispelling suspicion in a short period of time." United States v. Seelye, 815 F.2d 48, 50 (8th Cir. 1987)(citing United States v. Jones, 759 F.2d 633, 636-37 (8th Cir.), cert. denied, 474 U.S. 837 (1985)). A police officer may conduct a patdown search of a suspect during an investigative stop if the officer has reason to believe that the person is armed and dangerous. See Terry v. Ohio, 392 U.S. 1, 7, 30 (1968)(officer grabbed suspect, spun him around and frisked for weapons). In conducting the investigative stop and checking for possible weapons, officers must employ the least intrusive means of detention reasonably necessary to achieve the purpose of the stop. See Florida v. Royer, 460 U.S. 491, 500 (1983); United States v. Miller, 974 F.2d 953, 957 (8th Cir. 1992)("a police officer's use of handcuffs can be a reasonable precaution during a Terry stop").

Here, the officers' actions were reasonable under the circumstances. As set forth above, the information available to the officers was that defendant Montgomery had been shooting a weapon and that he had attempted to elude police, both in a high speed car chase and then on foot. The Court finds that the officers' actions in taking Montgomery to the ground and then handcuffing him were reasonably necessary to protect the officers' personal safety and to maintain the status quo so that the officers could conduct their investigation of the shooting.

"In determining whether probable cause exists to make a warrantless arrest, the court looks to the totality of the circumstances to see whether a prudent person would believe the individual had

---

[1] In addition, the officers were justified in stopping defendant Montgomery for multiple traffic violations. As the Eighth Circuit Court of Appeals has observed, "any traffic violation, however minor, gives an officer probable cause to stop a vehicle." United States v. Arciniega, 569 F.3d 394, 397 (8th Cir. 2009). Accord United States v. Lyons, 486 F.3d 367, 371 (8th Cir. 2007); United States v. Gregory, 302 F.3d 805, 809 (8th Cir. 2002), cert. denied, 538 U.S. 992 (2003). Before he was finally apprehended, defendant Montgomery had exceeded the posted speed limit, had failed to yield to an officer after he activated his lights and siren, had failed to stop at stop signs and had run away from the scene of an accident.

committed or was committing a crime." United States v. Segars, 31 F.3d 655, 659 (8th Cir. 1994), cert. denied, 513 U.S. 1099 (1995)(citing Illinois v. Gates, 462 U.S. 213, 232-33 (1983)). Defendant Montgomery was arrested on felon in possession charges after officers determined that defendant was a felon and a firearm had been located in the vehicle from which he fled. (See Fact No. 5, supra) The Court finds that the officers were justified in arresting defendant Montgomery as they had probable cause to believe that Montgomery had committed a crime. Given the Court's finding that the officers were justified in arresting defendant Montgomery, defendant's argument to suppress all statements based on the illegality of his arrest must fail.

Defendant Montgomery's argument that the search of the vehicle was improper must also fail. It is settled law that an officer may seize an object in plain view without a warrant provided the officer is lawfully in the position from which he views the object, the object's incriminating character is immediately apparent and the officer has a lawful right to access the object. See United States v. Khabeer, 410 F.3d 477, 482 (8th Cir. 2005). See also Payton v. New York, 445 U.S. 573, 587 (1980)("The seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity.") Again, the information provided to the officers was that defendant Montgomery had been shooting a weapon. (See Fact No. 2, supra) Montgomery then attempted to elude the police, both in a high speed car chase and on foot. (See Fact No. 3, supra) Montgomery was in custody and the weapon was not found on his person. As Sergeant Williams walked around to look in Montgomery's vehicle through the passenger's side, Sergeant Williams saw a pistol in the passenger's seat in plain view. (See Fact No. 5, supra) Finally, the officers had been advised that Montgomery was a convicted felon. (Id.) The seizure of the firearm was proper under the plain view doctrine.

Even if Sergeant Williams had not observed the firearm in plain view, officers would have discovered the firearm when they conducted an inventory search of the vehicle prior to towing it. Under the inevitable discovery exception to the exclusionary rule, if there was a reasonable

probability that the evidence would have been discovered by lawful means in the absence of police misconduct and if the government was actively pursuing a substantial, alternative line of investigation at the time of the constitutional violation, the evidence should not be suppressed. See United States v. Hammons, 152 F.3d 1025, 1029 (8th Cir. 1998), cert. denied, 525 U.S. 1092 (1999). As set forth above, defendant Montgomery had been involved in a shooting incident, he had attempted to elude the police, both in a high speed car chase and on foot, he had committed numerous traffic violations and he had wrecked his car into a parked vehicle. The Court finds that defendant Montgomery would have been arrested and his vehicle would have been towed from the scene even if the firearm had not been discovered. Kansas City Police Department procedure requires police to search a vehicle and inventory it prior to a tow. (See Fact No. 6, supra) Officers would have discovered the firearm when they conducted the inventory search. Thus, under the doctrine of inevitable discovery, the firearm should not be suppressed.

IV. CONCLUSION

Based on the foregoing, it is

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order denying defendant's Motion to Suppress Evidence (doc #75).

The parties are reminded they have fourteen days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections to same. A failure to file and serve objections by this date shall bar an attack on appeal of the factual findings in this Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

            */s/ Sarah W. Hays*
            SARAH W. HAYS
          UNITED STATES MAGISTRATE JUDGE